In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00175-CR


______________________________




STEPHEN WAYNE WIGGINS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 338th Judicial District Court


Harris County, Texas


Trial Court No. 878794




 




Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Justice Ross



MEMORANDUM OPINION



 Stephen Wayne Wiggins has filed a motion asking this Court to dismiss his appeal. 
Pursuant to Tex. R. App. P. 42.2, his motion is granted.

 The appeal is dismissed.


 Donald R. Ross

 Justice



Date Submitted: March 7, 2003

Date Decided: March 10, 2003


Do Not Publish



.WPParaBoxWrapper
{
 padding: 0px;
 float: left
}

p
{
 margin-top: 0px;
 margin-bottom: 1px
}

hr
{
 height: 0.0125in;
 background-color: black
}

span.WPFloatStyle
{
 visibility: hidden;
 position: absolute;
 left: 10px;
 right: 10px;
 background-color: rgb(255, 255, 225);
 border-width: 1px;
 border-style: solid;
 border-color: black;
 margin-top: 25px;
 padding: 6px;
 line-height: normal
}

span.WPNormal
{
 font-family: "Times New Roman", serif;
 font-size: 12pt;
 font-weight: normal;
 font-style: normal;
 font-variant: normal;
 text-align: left;
 text-decoration: none;
 color: black;
 vertical-align: middle;
 text-indent: 0in
}

body
{
 font-family: "Times New Roman", serif;
 font-size: 12pt;
 font-weight: normal;
 font-style: normal
}

















In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00128-CR
______________________________


JOHN HARTGROVE, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 202nd Judicial District Court
Bowie County, Texas
Trial Court No. 03F0720-202


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION

            The day before her fourth birthday, S.W. was in the bathtub. Her mother, who was bathing
her, tried to teach S.W. how to wash her own private parts. S.W.'s reaction, turning her back on her
mother and sitting down with her head hung in shame, signaled to her mother that something was
wrong. When the mother asked S.W. if someone had touched her, S.W. said "Papa John" had
touched her with his fingers and that it had hurt. 
            Identified as "Papa John," John Hartgrove was convicted of aggravated sexual assault of a
child and sentenced to thirty-three years' imprisonment. Hartgrove appeals, attacking the legal and
factual sufficiency of the evidence to prove two things: that there was penetration during the time
period described in the indictment and that Hartgrove was the perpetrator. We affirm the trial court's
judgment because (1) sufficient evidence proves penetration within the required time frame, and
(2) sufficient evidence proves Hartgrove was the perpetrator.
(1)       Sufficient Evidence Proves Penetration Within the Required Time Frame
            Hartgrove asserts that "[a]lthough there may be . . . sufficient evidence of penetration [of
S.W.'s sexual organ], there is no evidence, direct or indirect, of [that] penetration during the period
described in the indictment"—that is, between August 1, 2003 and September 21, 2003. The State
counters that it is not bound by the specific range of dates recited in the indictment, because it is
clear the offense occurred before the indictment was issued, but within the applicable period of
limitations. The law sides with the State on this point.
            "[W]hen an indictment alleges that an offense occurred 'on or about' a particular date, the
State is not bound by the date alleged, and may prove any offense of the character alleged, within
the period covered by the applicable statute of limitations." Garcia v. State, 981 S.W.2d 683, 685
(Tex. Crim. App. 1998) (en banc) (citing Sledge v. State, 953 S.W.2d 253, 255–56 (Tex. Crim. App.
1997) (en banc); Mireles v. State, 901 S.W.2d 458, 459 (Tex. Crim. App. 1995) (en banc) (plurality
opinion)); Lane v. State, 174 S.W.3d 376, 386 n.12 (Tex. App.—Houston [14th Dist.] 2005, pet.
ref'd). The "on or about" language of an indictment allows the State to prove a date other than the
one alleged in the indictment if the date predates the presentment of the indictment and is within the
statutory limitations period. Sledge, 953 S.W.2d at 256; see Tex. Code Crim. Proc. Ann. art.
21.02(6) (Vernon 1989); Wright v. State, 28 S.W.3d 526, 532 (Tex. Crim. App. 2000). The statute
of limitations for aggravated sexual assault of a child under fourteen years of age is ten years after
the victim's eighteenth birthday. Tex. Code Crim. Proc. Ann. art. 12.01(5)(B) (Vernon Supp.
2005); see Tex. Pen. Code Ann. § 22.021(a)(1)(B), (a)(2)(B) (Vernon Supp. 2005).
            S.W. was born September 22, 1999. On September 21, 2003, S.W. first made an allegation
to her mother about sexual contact by Hartgrove. Since that time, S.W. had no contact with
Hartgrove. Therefore, by necessity, if the charged offense occurred, it must have occurred between
September 22, 1999 and September 21, 2003. The indictment was issued November 20, 2003. 
Therefore, the charged offense, if any, must have occurred before the indictment and within the
statute of limitations.
            S.W.'s mother testified that, on September 21, 2003, S.W. told her that "Papa John" touched
her private parts with his fingers and that it hurt. S.W.'s mother also quoted S.W. as asking her not
to "tear [her] apart like Papa John," and later quoted her as reporting that "Papa John put white stuff
in" S.W.'s vagina and anus and that S.W. wanted to go back to the doctor to get it out. On cross-examination, S.W.'s mother testified that, about a week after the initial outcry, S.W. reported to her
that Hartgrove stuck his finger in her vagina or her anus. 
            Kathy Lach, a nurse who performed a sexual assault examination on S.W., testified to S.W.'s
allegation to her at the time of that examination that "Papa John" touched S.W.'s vagina and anus. 
Lach also testified that State's Exhibits 3 and 4 show a well-healed scar in S.W.'s perineal area, a scar
consistent with penetration of S.W.'s vagina. 
            S.W. testified that "Papa John" touched her "tutu," referring to her vagina. When S.W. was
asked at trial to demonstrate on an anatomically correct doll how "Papa John" touched her "tutu,"
she pushed hard, a fact noted by the State:
Q[By State]Can you show me how Papa John touched you?
 
A[By S.W.]Like that. (Indicating.)
 
QOkay. Now, you were pushing really hard. Were you trying to get
your finger inside or push it in?
 
ANo. I was trying to get it out.

When the State questioned S.W. on the difference between "inside" and "outside," S.W. apparently
had those two terms backward. As recognized, however, on the record by the State and by the trial
court, when S.W. demonstrated with the anatomically correct female doll how "Papa John"
"touched" her, she inserted her finger into the doll's vagina. 
            As pointed out by Hartgrove, at no time is any of the evidence of sexual contact expressly
associated with a date. But, S.W. was less than four years of age at the time of the events she
described or demonstrated, and such events could reasonably be believed to be from her memory. 
And, S.W.'s mother testified that, looking back on the summer of 2003, she now can see signs from
S.W. which then were not understood to be warning signs, but which now take on significance. 
Before the summer of 2003, S.W. was "crazy about" Hartgrove. But signs during that summer, as
described by S.W.'s mother, included S.W. hiding behind her mother's legs when Hartgrove and his
wife came over, avoiding contact with Hartgrove after he had been gone for two weeks for his
mother's funeral, and talking with S.W.'s brother about Hartgrove and mentioning "the blood coming
out." Hartgrove's ex-wife, who divorced him after S.W.'s allegations surfaced, testified that S.W.
ran and hid behind her mother's legs when first encountering Hartgrove after he had been gone for
a couple of weeks in connection with the last illness and death of Hartgrove's mother. Hartgrove's
ex-wife also recounted other signs in the weeks leading up to the September 21, 2003, initial report
by S.W. that, in retrospect, were indications of a problem: at a family gathering, S.W. avoided
Hartgrove; after S.W.'s bath and with S.W. still naked and under a towel, Hartgrove was playing
rough with her by jamming his hand under the towel, making S.W. "really upset"; and S.W. ran and
locked herself in the bathroom the following day when Hartgrove was at the house. The jury could
have reasonably concluded that these behavioral changes in S.W. were caused by Hartgrove's
behavior toward S.W. in the weeks leading up to September 21, 2003.
            Because the date of the offense shown by the evidence predates the presentation of the
indictment and is within the statute of limitations, the evidence is both legally and factually
sufficient


 to support the conviction under this indictment. The evidence also points to an offense
date in the weeks before September 21, 2003. We overrule these points of error.
(2)       Sufficient Evidence Proves Hartgrove Was the Perpetrator
            Hartgrove also asserts that the evidence is legally and factually insufficient to identify him
as the perpetrator. That assertion is based, primarily, on the failure of S.W. to identify Hartgrove in
open court. Although given ample opportunity by the State to point to Hartgrove in the courtroom
at trial, S.W. did not do so. She did acknowledge, however, that "Papa John" was the man who lived
in the house in which Hartgrove lived with Hartgrove's then wife. S.W. also acknowledged that
Hartgrove was the only person she called "Papa John." S.W.'s mother and grandmother both testified
that S.W. called Hartgrove "Papa John." There is no evidence that S.W. or anyone in the family
called anyone else "Papa John." Legally and factually sufficient evidence supports the jury's finding
that Hartgrove was the perpetrator of the offense.
            Because the evidence is legally and factually sufficient to fix the date of the offense within
permissible limits and to establish Hartgrove as the perpetrator, we affirm the trial court's judgment.




                                                                        Josh R. Morriss, III
                                                                        Chief Justice

Date Submitted:          May 22, 2006
Date Decided:             June 14, 2006

Do Not Publish