# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00137-CR

**Reid Mark Paoloni, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 426TH JUDICIAL DISTRICT
### NO. 63,826, HONORABLE FANCY H. JEZEK, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury convicted Reid Mark Paoloni of murder, s*ee* Tex. Penal Code Ann. § 19.02 (West 2003), sentenced him to life in prison, and assessed a $10,000 fine. Paoloni challenges the legal and factual sufficiency of the evidence. He also argues that the district court abused its discretion in refusing to allow him to ask jurors about range of punishment during voir dire and in overruling his objection to the State's closing argument on parole. We affirm the judgment of conviction.

On the evening of April 1, 2008, Christopher Wall, Jr. and several other people were at the home of Jessica Talbot playing a card game. At some point, Wall drove three others to a convenience store in Killeen. Another car approached, honked, pulled up in front of Wall's vehicle, blocking it in. Jonathan Medina was the driver, and Paoloni the passenger.

Eventually, Wall was able to maneuver around Medina's car and left the convenience store. Medina and Paoloni followed. Paoloni, according to Medina, was hoping to "pick up" one of the women who was a passenger in Wall's vehicle and who had flashed her breasts at Paoloni and Medina when they were stopped at the convenience store. As Wall's vehicle approached Talbot's house, shots were fired from Medina's vehicle, and Wall's vehicle crashed into another vehicle. An examination of Wall showed that he had died from a gunshot wound to the head. Paoloni was indicted for the murder of Wall. *See id.* A jury convicted him as charged.

In his first issue, Paoloni challenges the sufficiency of the evidence to support his conviction. Specifically, Paoloni challenges the intent element, arguing that "no rational trier of fact could have found beyond a reasonable doubt that [Paoloni] intentionally or knowingly caused the death of [Wall]."

In reviewing a legal sufficiency challenge, we view the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt. *Salinas v. State*, 163 S.W.3d 734, 737 (Tex. Crim. App. 2005). The jury, as the trier of fact, "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The jury may choose to believe or disbelieve any portion of the testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). The jury may also draw reasonable inferences from basic facts to ultimate facts. *Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

In evaluating the factual sufficiency of the evidence, we view all the evidence in a neutral light and will set aside the verdict only if we are able to say, with some objective basis in the record, that the conviction is clearly wrong or manifestly unjust because the great weight and preponderance of the evidence contradicts the jury's verdict. *Watson v. State*, 204 S.W.3d 404, 414-17 (Tex. Crim. App. 2006). We cannot conclude that a conflict in the evidence justifies a new trial simply because we disagree with the jury's resolution of that conflict, and we do not intrude upon the fact-finder's role as the sole judge of the weight and credibility of witness testimony. *See id.* at 417; *Fuentes*, 991 S.W.2d at 271. The fact-finder may choose to believe all, some, or none of the testimony presented. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *Bargas v. State*, 252 S.W.3d 876, 888 (Tex. App.—Houston [14th Dist.] 2008, no pet.). In our review, we discuss the evidence that, according to appellant, undermines the jury's verdict. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

Section 19.02 of the penal code provides that a person commits the offense of murder if he:

(1)     intentionally or knowingly causes the death of an individual;

(2)     intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual; or

(3)     commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

3

Tex. Penal Code Ann. § 19.02(b). Although Paoloni's argument tracks the language of section 19.02(b)(1), the indictment tracks the language of section 19.02(b)(3), alleging that Paoloni:

> did then and there intentionally or knowingly commit or attempt to commit, an act clearly dangerous to human life, to-wit: shooting a firearm, that caused the death of Christopher Wall, Jr., and the defendant was then and there in the course of and in furtherance of, or in immediate flight from, the commission or attempted commission of a felony, to wit: Deadly Conduct.

Thus, the State was not required to prove that Paoloni intentionally or knowingly caused the death of Wall, but that Paoloni committed an act clearly dangerous to human life while committing or attempting to commit a felony, *see id.* § 19.02(b)(3).

The evidence shows that Paoloni intentionally fired two or three shots at Wall's vehicle, which Paoloni knew was occupied by Wall and several other people. Witnesses both identified Paoloni as the passenger in the car and testified that the shots had been fired by the person in the passenger side. An examination of the gunshot wound to Wall was consistent with the shot's having been fired from the passenger side of a vehicle located behind Wall's vehicle. Medina, the owner and driver of the vehicle, testified that Paoloni had stood up and fired two or three shots at Wall's vehicle. Paoloni was identified as the owner of the gun and, in fact, had admitted that the gun was his during a traffic stop eleven days prior to the shooting.

Paoloni elicited testimony from a neighbor, who observed the incident from four houses down and stated that, after the wreck, he saw the driver of the vehicle get out and fire additional shots. Paoloni also relies on the testimony of another neighbor's nine-year-old son, who testified that he thought he saw the shots coming from the driver side of the vehicle, despite

4

his mother's testimony to the contrary. The testimony of these two witnesses, however, directly contradicts the testimony of the other passengers in Wall's vehicles, the testimony of Medina, who was driving the vehicle in which Paoloni was a passenger, the testimony of several other neighbors who had witnessed the incident, and the forensic evidence. Although there was some conflicting evidence admitted, the evidence was legally and factually sufficient to support the jury's determination that, in light of all the evidence presented, Paoloni had "commit[ed] an act clearly dangerous to human life" in the course of committing the felony of deadly conduct. *See id.* (murder); *id.* § 22.05 (West 2003) (deadly conduct); *Salinas*, 163 S.W.3d at 737 (legal sufficiency); *Watson*, 204 S.W.3d at 414-17 (factual sufficiency). Accordingly, we overrule Paoloni's first two issues.

In his third issue, Paoloni argues that the district court abused its discretion by refusing to allow him to ask jurors about range of punishment during voir dire. The trial court may impose reasonable restrictions on the exercise of voir dire examination. *Boyd v. State*, 811 S.W.2d 105, 115 (Tex. Crim. App. 1991). We review the trial court's decision to limit voir dire under an abuse of discretion standard. *Id.* The trial court abuses its discretion when it limits a proper question concerning a proper area of inquiry. *Dinkins v. State*, 894 S.W.2d 330, 345 (Tex. Crim. App. 1995). In order to allow counsel to effectively assist the defendant and to help ensure an impartial jury by intelligently exercising challenges to the jury panelists, "the permissible areas of questioning the venire in order to exercise peremptory challenges are broad and cannot be unnecessarily limited." *Linnell v. State*, 935 S.W.2d 426, 428 (Tex. Crim. App. 1996).

Paoloni complains about the following exchange:

Defense counsel: I'm going to ask you a hypothetical question, I'm going to ask that question individually of each of you. Here's the question. You're on a jury. You found someone guilty of murder. The punishment is 5 to 99 years or life, and a $10,000 fine.

You find that it was done knowingly, that the person knowingly and intentionally committed an act clearly dangerous to human life. That is, shooting a firearm that caused the death of a person.

There is no reasonable doubt that the person is guilty. It is a unanimous verdict. All of you believe beyond a reasonable doubt that the person is guilty.

Wasn't done in self-defense. Person wanted to do it. The person meant to do it.

The victim did not deserve to die.

Here's my question.

. . . .

Can you in good faith, fairly consider as little as five years in prison as an appropriate punishment—

State: I'm going—

Defense counsel: —given that hypothetical that I've just given you.

State: —to object to the hypothetical being based on facts specific to this case. He's used the elements of the offense in the hypothetical, facts specific. Hypothetical which is improper jury question.

Defense counsel: If I might respond. The question that I just asked is in Cardenas versus State that was recently decided by court of appeals in Texas. It is a proper question.

Court: I sustain the objection.

6

Commitment questions are those that commit a prospective juror to resolve, or refrain from resolving, an issue a certain way after learning a particular fact. *Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001). Sometimes the law requires a certain type of commitment from jurors, such as being able to consider the full range of punishment; such questions are therefore proper, even though they are commitment questions. *Id.* at 181. However, an otherwise proper question is impermissible if it attempts to commit the venire panelist to a particular sentence based on particular facts, *see Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002); *Standefer*, 59 S.W.3d at 181, or is confusing or misleading, *see Howard v. State*, 941 S.W.2d 102, 108 (Tex. Crim. App. 1996); *Bolden v. State*, 73 S.W.3d 428, 430 (Tex. App.—Houston [1st Dist.] 2002, no pet.). When the trial court sustains an objection to the form of a question but does not restrict counsel from pursuing the underlying area of inquiry, counsel must rephrase the improperly phrased question or waive the voir dire restriction. *Bolden*, 73 S.W.3d at 431 (citing *Howard*, 941 S.W.2d at 108; *Trevino v. State*, 815 S.W.2d 592, 601 (Tex. Crim. App. 1991)); *Wright v. State*, 28 S.W.3d 526, 534 (Tex. Crim. App. 2000).

Here, the defense counsel asked potential jurors whether they could consider the full range of punishment for a person who intentionally and knowingly committed an act dangerous to human life by shooting a firearm. The State's objection was to the form of the question, as based on facts specific to the case, not to the fact that counsel had asked whether prospective jurors could consider the full range of punishment. Likewise, the district court's ruling was directed to the question's form, not to its substance, and the court did not disallow questioning in this area. After the district court sustained the State's objection, however, defense counsel made no attempt

7

to rephrase it or to follow up. Where the State's objection and the court's ruling was to the form of the question, rather than its substance, and where defense counsel made no attempt to rephrase the question or to follow up, we cannot say that the district court abused its discretion by improperly restricting voir dire. *See Bolden*, 73 S.W.3d at 431; *Wright*, 28 S.W.3d at 534; *Boyd*, 811 S.W.2d at 115.

Paoloni relies on *Cardenas v. State*, 305 S.W.3d 773, 779 (Tex. App.—Fort Worth 2009, pet. granted), as support for the propriety of his question. Despite the similarities between the voir dire question at issue here and the question asked by defense counsel in *Cardenas*, because of procedural variations, *Cardenas* is not dispositive. The ultimate issue before the court in *Cardenas* was whether the trial court properly denied Cardenas's challenges for cause based on potential jurors' answers to a range of punishment question. *Id.* at 780. Although the court of appeals, in making its determination, also addressed the propriety of defense counsel's question, the State did not raise its objection to the propriety of the question until after voir dire had concluded, when defense counsel attempted to assert his challenges for cause based on range of punishment. *Id.* at 781-82. Thus, between the time the State raised its objection and the time the trial court denied Cardenas's challenges for cause, defense counsel had been given no opportunity to rephrase his question. *See id.* at 781. Here, however, because the State's objection was as to the form of the question and because defense counsel had the opportunity to restate the question or to follow through with his questioning, but made no attempt to do so, we cannot conclude that the district court abused its discretion by improperly restricting voir dire. *See Bolden*, 73 S.W.3d at 431; *Wright*, 28 S.W.3d at 534; *Boyd*, 811 S.W.2d at 115.

In his fourth issue, Paoloni argues that the district court erred in overruling his objection to the State's argument that the jury should consider the parole law as it applies to Paoloni. Permissible jury argument includes summation of the evidence, reasonable deduction from the evidence, answer to argument of opposing counsel, and plea for law enforcement. *Allridge v. State*, 762 S.W.2d 146, 155 (Tex. Crim. App. 1988). To warrant reversal, argument must be manifestly improper, violate a statute, or inject new, harmful facts into the case. *Everett v. State*, 707 S.W.2d 638, 640 (Tex. Crim. App. 1986).

Paoloni complains about the following exchange:

| | |
|---|---|
| State: | Judge just read it to you, he will not become eligible for parole until the actual time served equals one-half of the sentence. You should take that into consideration. |
| Defense counsel: | Objection. Your Honor. Your charge specifically states they're not to take the applicability of the parole law into consideration in determining their sentence. |
| Court: | I'll overrule the objection. |

After the court had overruled Paoloni's objection, the State made no further mention of the parole law.

The portion of the jury charge to which the State refers reads:

> Under the law applicable in this case, if the Defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or thirty (30) years, whichever is less, without consideration of any good conduct time he may earn. Eligibility for parole does not guarantee that parole will be granted. It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is

9

sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

A jury may only consider the concept of parole eligibility in general, not as the law specifically applies to the defendant on trial. Tex. Code Crim. Proc. Ann. art. 37.07, § (4)(a) (West Supp. 2009). Thus, when attempting to explain the existence of parole law as set forth in the trial court's charge, a prosecutor must avoid applying the law to the defendant on trial. *Kearney v. State*, 630 S.W.2d 934, 935 (Tex. Crim. App. 1982) (quoting *Clanton v. State*, 528 S.W.2d 250, 252 (Tex. Crim. App. 1975)); *Clay v. State*, 741 S.W.2d 209, 211 (Tex. App.—Dallas 1987, pet. ref'd). A prosecutor may, however, quote or paraphrase the jury charge so long as the prosecutor does not misstate the law or present a statement of law contrary to that presented in the charge. *Whiting v. State*, 797 S.W.2d 45, 48 (Tex. Crim. App. 1990).

Here, a comparison of the jury's charge with the complained-of argument shows that the prosecutor did not assert a legal proposition contrary to the court's charge to the jury or misstate the law. The State's argument that Paoloni "will not become eligible for parole until the actual time served equals one-half of the sentence" is a direct quote from the court's charge, which expressly instructs the jury to "consider the existence of the parole law and good conduct time." While the prosecutor used the word "he" during the argument, the prosecutor neither applied the parole law to Paoloni nor encouraged the jury to consider the effect of the parole law when it assessed Paoloni's punishment. Comparing the court's charge with the prosecutor's argument, we

hold that the complained-of argument does not go beyond explaining or paraphrasing the parole portion of the jury charge. Accordingly, we overrule Paoloni's fourth issue.

Having overruled each of Paoloni's issues, we affirm the judgment of conviction.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Waldrop and Henson

Affirmed

Filed: August 20, 2010

Do Not Publish

11