Gregory E. WRIGHT, Appellant,

v.

The STATE of Texas.

No. 73,004.

Court of Criminal Appeals of Texas.

June 28, 2000.

Robert P. Abbott, Coppell, for appellant.

Anne B. Wetherholt, Asst. Dist. Atty., Dallas, for the State.

## OPINION

JOHNSON, J., delivered the opinion of the Court, in which McCORMICK, P.J., and MEYERS, MANSFIELD, PRICE, HOLLAND, WOMACK and KEASLER, J.J., joined.

Appellant was convicted of capital murder in December 1997. TEX. PENAL CODE ANN. § 19.03(a). Pursuant to the jury's answers to the special issues set forth in Texas Code of Criminal Procedure article 37.071 §§ 2(b) and 2(e), the trial court sentenced him to death. Art. 37.071

§ 2(g).[1]  Direct appeal to this Court is automatic.  Art. 37.071 § 2(h).  Appellant raises sixteen points of error.  Because he does not challenge the sufficiency of the evidence to support either his conviction or punishment, a statement of facts is not necessary.  We affirm.

## PRE–TRIAL ISSUES

In his second point of error, appellant complains that the trial court failed to comply with the selection process prescribed by Article 26.052 in appointing him a trial attorney and that he was thereby deprived of "qualified" trial counsel.  Appellant also asserts that the legislature's use of the language "attorneys 'qualified' for appointment" in Article 26.052(d), necessarily means that the legislature intended for capital defendants to be appointed lawyers who would provide more than the "minimally 'effective' representation" required by the Sixth Amendment to the United States Constitution.  *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  Appel-

lant provides no support for this interpretation of the statute.

■ Article 26.052 generally provides that, in administrative judicial regions not served by a public defender's office, a local selection committee shall be created and shall adopt standards for the qualification of attorneys to be appointed to death penalty cases.[2]  We note that appellant points to no place in the record where he objected to the procedure used to appoint him counsel or to the qualifications of his counsel; thus, he failed to preserve this point for appellate review.  TEX.R.APP. P. 33.1(a)(1); *see also Lagrone v. State,* 942 S.W.2d 602, 618 (Tex.Crim. App.), *cert. denied,* 522 U.S. 917, 118 S.Ct. 305, 139 L.Ed.2d 235 (1997).  However, because his complaint is that trial counsel was not qualified, in the interest of justice, we will review the point.

■ Assuming, *arguendo,* that the statute was not adhered to, we consider whether appellant was harmed by the noncompliance.  *See Cain v. State,* 947 S.W.2d 262 (Tex.Crim.App.1997).  Appellant has

---

1. Unless otherwise indicated, all references to Articles refer to the Code of Criminal Procedure.

2. Art. 26.052.  Appointment of Counsel in Death Penalty Case, Reimbursement of Investigative Expenses.

    (a) Notwithstanding any other provision of this chapter, this article establishes procedures in death penalty cases for appointment and payment of counsel to represent indigent defendants at trial and on direct appeal and to apply for writ of certiorari in the United States Supreme Court.

    (b) If a county is served by a public defender's office, trial counsel and counsel for direct appeal and to apply for a writ of certiorari may be appointed as provided by the guidelines established by the public defender's office.  In all other cases in which the death penalty is sought, counsel shall be appointed as provided by this article.

    (c) A local selection committee is created in each administrative judicial region created under Section 74.042, Government Code.  The administrative judge of the judicial region shall appoint the members of the committee.  A committee shall have not less than four members, including:

    (1) the administrative judge of the judicial region;

    (2) at least one district judge;

    (3) a representative from the local bar association; and

    (4) at least one practitioner who is board certified by the State Bar of Texas in criminal law.

    (d) The committee shall adopt standards for the qualification of attorneys for appointment to death penalty cases.  The committee shall prominently post the standards in each district clerk's office in the region with a list of attorneys qualified for appointment.

    (e) The presiding judge of the district court in which a capital felony case is filed shall appoint counsel to represent an indigent defendant as soon as practicable after charges are filed, if the death penalty is sought in the case.  The judge shall appoint lead trial counsel from the list of attorneys qualified for appointment.  The judge shall appoint a second counsel to assist in the defense of the defendant, unless reasons against the appointment of two counsel are stated in the record.

made no claim of ineffective assistance of counsel nor has he pointed to any specific instances of misconduct. Further, our own reading of the record has not shown any obvious inadequacies in representation.[3] Without harm, appellant cannot prevail on this point of error. Point of error two is overruled.

Appellant asserts in his third point of error that the trial court erred by denying his motion to quash the indictment, contending that the instrument had been improperly amended without notice. In his fourth point of error, appellant asserts that the trial court erred in failing to give him a ten-day continuance because of the amendment, as required by Article 28.10.

■ The record reveals that on April 30, 1997, the state filed an indictment alleging that appellant murdered Donna Vick "on or about the 23rd day of March A.D.1997...." On May 16th, the state filed a motion to amend the indictment requesting that "21st" be substituted for "23rd." The indictment was subsequently physically altered with the "23rd" crossed out and "21st" handwritten in and initialed.[4] Voir dire began on August 25th, and various panels were told that the crime occurred on or about March 21st. Appellant did not appear to have recognized that the date had been changed until the last week of voir dire in early November. Approximately thirteen days after the conclusion of voir dire, appellant filed a motion to quash the indictment, claiming that he had not received notice of the amendment.

At a hearing on the motion to quash, the prosecutor claimed that he had served the motion to amend the indictment on defense counsel shortly after the trial court had altered the date on the face of the indictment. Defense counsel denied ever receiv-

ing the document and urged that, even if he had received notice, service after amendment would have been improper under Article 28.10. The trial court denied appellant's motion.

Following a recess, the state noted that it had reviewed Article 28.10 and acknowledged that service after amending the indictment was a violation of the statute. Hence, the state conceded that the indictment had not been effectively amended. The state urged the trial court to disregard the amendment and proceed on the original indictment. Defense counsel responded that, properly or not, the indictment had been physically amended and it would take an additional amendment complying with the Article 28.10 procedures to effectively reinstate the original date on the document. Following Article 28.10, this amendment would then entitle appellant to a ten-day continuance before the start of trial.

The trial court again denied the motion to quash, but proclaimed that the attempted amendment from the date of the 23rd to the date of the 21st was not effective. However, the trial court refused to again physically alter the face of the indictment to remedy the ineffective amendment. The indictment was presented to the jury with the original language.[5] The trial court denied appellant's request for a continuance under Article 28.10.

The thrust of appellant's argument is that because he was not properly notified of the amendment to the indictment, he was entitled to no less than a ten-day period to address the change and prepare for trial. We need not determine whether the amendment to the indictment was indeed effective or whether the trial court erred in denying appellant ten days to prepare for trial. Rather, we hold that

---

3. The record reveals that appellant's attorney filed numerous pre-trial motions, conducted voir dire, cross-examined the state's witnesses, made objections, and made arguments at both phases of trial.

4. This was apparently done by the trial court, although the initials are not entirely clear.

5. The jury charge also contained the date of March 23rd as originally returned in the indictment.

appellant was not harmed by these events. *See* Tex.R.App. P. 44.2; *Cain v. State,* 947 S.W.2d 262 (Tex.Crim.App.1997).

It is well settled that the "on or about" language of an indictment allows the state to prove a date other than the one alleged as long as the date proven is anterior to the presentment of the indictment and within the statutory limitation period. *See* Art. 21.02(6); *Sledge v. State,* 953 S.W.2d 253, 255–56 (Tex.Crim.App. 1997); *Mitchell v. State,* 168 Tex.Crim. 606, 330 S.W.2d 459, 462 (1959). There is no statute of limitations period for murder. *See* Art. 12.01(1). Hence, when appellant was indicted for murder, he was put on notice to prepare for proof that the crime happened any time before the presentment of the indictment. *Sledge, supra; Thomas v. State,* 753 S.W.2d 688, 693 (Tex.Crim. App.1988). Because both the original date and the date of the attempted amendment, which differed by two days, were prior to the presentment of the indictment, the indictment provided adequate notice for proof of either date.[6] *Id.* Points of error three and four are overruled.

Appellant submits in his fifth point of error that the trial court erred in denying his motion for a continuance to afford his defense expert an opportunity to review DNA analyses recently developed by the state's experts. A motion for continuance is regulated by statute. *See* Art. 29.01, *et. seq.* Granting or denying such a motion is within the sound discretion of the trial court. *See* Art. 29.01, *et. seq.; Janecka v. State,* 937 S.W.2d 456, 468 (Tex.Crim. App.1996), *cert. denied,* 522 U.S. 825, 118 S.Ct. 86, 139 L.Ed.2d 43 (1997). In order to establish an abuse of the trial court's discretion, an appellant must show that the denial of his motion resulted in actual prejudice. *Janecka,* 937 S.W.2d at 468.

Appellant correctly notes that the United States Supreme Court declared

in *Ake v. Oklahoma* that due process requires that a defendant be given access to the raw materials integral to the building of an effective defense. *Ake,* 470 U.S. 68, 76–77, 105 S.Ct. 1087, 1092, 84 L.Ed.2d 53 (1985). This access includes the appointment of experts. *Ake, supra.* However, appellant does not claim that he was denied a necessary expert; rather, he argues that he should have been granted additional time for his expert to review the state's evidence. We do not agree. Although appellant knew early on that this case involved blood/DNA analysis, and, although he had ample opportunity, he did not request that a defense DNA expert be appointed until December 1, 1997, the first day of trial on the merits.

On September 29, 1997, the state tendered a number of documents to appellant pursuant to a standing discovery order. On this same day, appellant specifically asked the prosecutor about the DNA testing results and was informed that the report should be completed within the next two to three weeks. The prosecutor also told appellant that the person preparing the report and the other members of the staff at the laboratory where the tests were performed would be available for interviews with defense counsel and would go over any preliminary results of tests that they already had. Yet, appellant did not request a defense DNA expert.

On October 14, 1997, appellant received a preliminary written report on the DNA testing results and on November 11, 1997, he received a complete report. On November 25, 1997, the state informed appellant that it intended to have testing performed on the same evidence by a second laboratory and that the results of these retests would not be available until December 1, 1997. Despite receiving these reports and communications from the state about additional testing, appellant still did not file a motion to have a defense DNA

---

**6.** We note that the state filed the motion to amend the date on the indictment more than

five months before trial on the merits began.

expert appointed until December 1, 1997, when the trial court granted the motion in its entirety.

Although appellant contends that the denial of his motion for continuance resulted in an unfair trial, he does not establish that the court's refusal to give him additional time actually prejudiced him. *See Heiselbetz v. State*, 906 S.W.2d 500, 511 (Tex.Crim.App.1995). Even if appellant could point to specific prejudice under this point of error, he would not now be allowed to profit from his own failure to act. Hence, appellant has failed to establish that the trial court abused its discretion in failing to grant his motion for continuance. Point of error five is overruled.

## VOIR DIRE

■ In his eighth point of error, appellant asserts that the trial court should have held a hearing and allowed questioning by the parties before excusing juror Downey. Because the court failed to do this but, in fact, examined the circumstances and excused the juror in the absence of both appellant and the juror, appellant asserts that the trial court violated his right to be present during trial. *See* Article 33.03. Appellant does not complain of the *excusal* of juror Downey, only that appellant was denied a hearing and his right to be present at the hearing.

The record reveals that Downey was the second juror to be seated in appellant's case. On the first day of trial, but before the jury had been sworn in, the trial court informed the parties that Downey had called the court obviously upset and had explained that her mother had just died and that she was on her way to the funeral. Downey made it clear to the court that she was emotionally unable to proceed as a juror in the case. The state had no objection to seating the alternate as the twelfth juror in the case, but appellant objected that Downey had not been shown to be

disqualified and, therefore, a hearing, in which appellant must be present, should be held. Nevertheless, the court excused Downey in absentia and seated the alternate juror in her stead.

■ The trial court has broad discretion to excuse prospective jurors for good reason. *Butler v. State*, 830 S.W.2d 125 (Tex.Crim.App.1992); Article 35.03. This authority continues even after an individual juror has been sworn and exists until the entire jury is empaneled and sworn. *Fuentes v. State*, 991 S.W.2d 267, 277–78 (Tex.Crim.App.1999); *Kemp v. State*, 846 S.W.2d 289, 295, n. 4 (Tex.Crim. App.1992), *cert. denied*, 508 U.S. 918, 113 S.Ct. 2361, 124 L.Ed.2d 268 (1993). Accordingly, before the entire jury has been empaneled and sworn, the trial court may excuse a juror with or without the consent of the parties. Because the trial court has such broad discretion to excuse a juror, appellant was not entitled to a formal hearing, hence, appellant's presence is not mandatory pursuant to Article 33.03 (mandating that a defendant be present during trial and voir dire proceedings). *See Adanandus v. State*, 866 S.W.2d 210, 216–20 (Tex.Crim.App.1993), *cert. denied*, 510 U.S. 1215, 114 S.Ct. 1338, 127 L.Ed.2d 686 (1994).

■ Although appellant does not complain of the excusal itself, we find that the trial court, after ascertaining that Downey was unable to proceed as a juror, did not abuse its discretion in excusing her. Point of error eight is overruled.

■ Appellant asserts in his eleventh and twelfth points of error that the trial court violated his federal and state constitutional rights by restricting his voir dire examination of venire member Zablosky.[7] Specifically, appellant complains that he was prohibited from inquiring into whether Zablosky would automatically find that a

7. Appellant contends that the trial court violated his right to effective assistance of counsel, his right against cruel and unusual punishment, and his rights to due process and due course of law.

person is a continuing threat to society simply because he was found guilty of capital murder. The exchange of which appellant complains follows:

[DEFENSE COUNSEL:] Let's talk about a situation where you have found the person on trial for capital murder guilty as charged. As you've been told, you then move over to these three questions. Now I—I read question 1, and sometimes I think that that's kind of a—an illogical question, because I almost feel like that if I've just found somebody—

[THE PROSECUTOR:] Objection, Your Honor. Can we approach on this?

(Off-the-record bench conference was had.)

THE COURT: All right. Mr. Zablosky, if you would do me a favor and step out in the hall for just a minute. I'll bring you right back in.

(Juror not present.)

THE COURT: All right. The—we're outside the presence of the juror.

[Defense Counsel], you may state your proposed question for the record.

[DEFENSE COUNSEL:] My question was, is this—I look at question number 1, and I think that it might be illogical that if a person has just been convicted of a capital murder, some people would think that question 1 would automatically be answered yes. How do you feel about that?

THE COURT: I sustain the State's objection to the form of that question.

Defense counsel then moved on to other topics in the voir dire examination.

▮▮▮ Appellant is correct in his assertion that it is a proper area of inquiry to ask a venire member whether a finding of guilty would automatically dictate a result in his mind as to the punishment questions. *Howard v. State*, 941 S.W.2d 102, 108–09 (Tex.Crim.App.1996); *Ex parte McKay*, 819 S.W.2d 478, 483 (Tex. Crim.App.1990). Further, a trial court would err if he refused to allow questions

in a proper area of inquiry. *Id.* However, this is not the situation presented here.

In the exchange quoted above, appellant asked his question and the state made a general objection and asked to approach the bench. After a discussion outside the presence of the venire member, the trial court sustained the objection as to the *form* of the question. This ruling in no way prohibited appellant from attempting to rephrase his question and ask it again, thereby covering the desired topic with the venire member, but he did not.

▮▮▮ As we stated in *Howard*, if the trial court merely limits a question due to its form, trial counsel must determine the basis of the limitation and attempt to fashion a query which complies with the perceived inadequacy. *Howard*, 941 S.W.2d at 110–11. Here, appellant made no attempt to determine the basis of the trial court's ruling and made no attempt to comply with that ruling. Although appellant is authorized to ask proper questions in a particular area of inquiry, he is not entitled to ask questions in any particular form. *Id.* Because appellant did not follow through on this topic, we cannot say that the trial court improperly restricted his voir dire of this venire member. Points of error eleven and twelve are overruled.

▮▮▮ In points of error thirteen and fourteen, appellant complains that the trial court erred in denying his challenges for cause to two different venire members. To preserve error, an appellant must demonstrate on the record that he asserted a clear and specific challenge for cause, that he used a peremptory challenge on the complained-of venire member, that all of his peremptory challenges were exhausted, that his request for additional strikes was denied, and that an objectionable juror sat on the jury. *Green v. State*, 934 S.W.2d 92, 105 (Tex.Crim.App.1996), *cert. denied*, 520 U.S. 1200, 117 S.Ct. 1561, 137 L.Ed.2d 707 (1997).

█ The record in the instant case shows that after the parties accepted the eleventh juror, appellant exhausted his fourteenth and fifteenth peremptory challenges. Appellant then requested and received two additional challenges. After using those challenges, appellant again requested additional challenges, but the request was denied. The twelfth juror was seated immediately thereafter over appellant's objection.

█ When the trial court errs in overruling a challenge for cause against a venire member, the defendant is harmed only if he uses a peremptory strike to remove the venire member and thereafter suffers a detriment from the loss of the strike. *Demouchette v. State*, 731 S.W.2d 75, 83 (Tex.Crim.App.1986), *cert. denied*, 482 U.S. 920, 107 S.Ct. 3197, 96 L.Ed.2d 685 (1987). Because the record reflects that appellant received two extra strikes in addition to the fifteen he was granted by statute, he did not suffer the loss of two strikes. For appellant to demonstrate harm, and thereby reversible error, he must show that challenges for cause on at least *three* different venire members were erroneously denied. *Penry v. State*, 903 S.W.2d 715, 732 (Tex.Crim.App.1995), *cert. denied*, 516 U.S. 977, 116 S.Ct. 480, 133 L.Ed.2d 408 (1995); *Martinez v. State*, 763 S.W.2d 413, 425 (Tex.Crim.App.1988), *cert. denied*, 512 U.S. 1246, 114 S.Ct. 2765, 129 L.Ed.2d 879 (1994). Because appellant has asserted error as to only *two* venire members, he cannot show that he was harmed. *Penry*, *supra*. Points of error thirteen and fourteen are overruled.

8. Appellant characterizes Adams as an "accomplice."

9. Appellant also objected that the admission of this evidence violated Articles 38.22 and 38.23; however, he does not raise these issues on appeal, therefore we shall not address them.

10. The Rule of Optional Completeness states: When part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, as when a letter is read, all letters on

## GUILT/INNOCENCE PHASE OF TRIAL

Appellant complains in his first point of error that the trial court erred by admitting into evidence the testimony of Detective Dan Trippel detailing his conversation with "accomplice" John Adams, who did not testify.[8] Appellant asserts that the evidence constituted hearsay and was the only direct evidence that appellant personally stabbed the victim. Appellant also asserts for the first time on appeal that the admission of this evidence deprived him of the opportunity to confront and cross-examine the witnesses against him.

Trippel testified on direct examination that, on the night of March 22, 1997, he was called to meet a man later identified as John Adams. Pursuant to what Adams told him, he went to another location where he found a car identified as belonging to the victim, Donna Vick. When Trippel requested that other officers check on Vick, they found her murdered in her residence. During cross-examination, defense counsel asked Trippel if Adams had claimed ownership of the knife used in the murder. Trippel responded that he had.

On redirect, the state attempted to elicit the remainder of that conversation, and appellant objected, claiming that the remainder of the conversation was inadmissible hearsay.[9] In a hearing outside the jury's presence, the state asserted that the remainder of the conversation was admissible under the Rule of Optional Completeness.[10] TEX.R.CRIM. EVID. 107.[11] The trial

the same subject between the same parties may be given. When a detailed act, declaration, conversation, writing or recorded statement is given in evidence, any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence. "Writing or recorded statement" includes depositions.

11. The Texas Rules of Criminal Evidence are now the Texas Rules of Evidence.

court agreed and allowed the state to elicit the evidence before the jury over appellant's continued objection.[12]

By the plain language of the rule, when part of a conversation is placed into evidence by one party, the other party can put the remainder of the conversation into evidence to explain the prior comments or otherwise make them fully understood. TEX.R.CRIM. EVID. 107; *Washington v. State*, 856 S.W.2d 184, 186 (Tex. Crim.App.1993). *See also Kipp v. State*, 876 S.W.2d 330, 340 n. 11 (Tex.Crim.App. 1994). Given the circumstances in the instant case that John Adams' admission of ownership of the knife could have misled the jury about who was responsible for the killing, the trial court was within its discretion in determining that the evidence was admissible.

Appellant also complains under this point that the admission of this evidence violated appellant's right to confront the witnesses against him under the Sixth Amendment. At trial, appellant objected only on hearsay and Rule 107 grounds. Because he did not object to error under the Confrontation Clause, appellant waives this argument on appeal. *Dewberry v. State*, 4 S.W.3d 735, 752 & n. 16 (Tex.Crim. App.1999); see also *Briggs v. State*, 789 S.W.2d 918, 924 (Tex.Crim.App.1990) (stating that even constitutional error may be waived); *Ex parte Crispen*, 777 S.W.2d 103, 105 (Tex.Crim.App.1989). Point of error one is overruled.

Appellant alleges in his ninth point that the trial court erred by admitting into evidence the parties' oral stipulations regarding both the date of the indictment and various documents relating to John Adams without first obtaining and approving appellant's written consent to stipulate as required by Article 1.15. Appellant asserts that the record contains no written agreement to stipulate to this evidence, therefore, the trial court never signed an instrument officially approving the stipulation agreement. Appellant misapplies Article 1.15.

Article 1.15 states:

No person can be convicted of a felony except upon the verdict of a jury duly rendered and recorded, unless the defendant, upon entering a plea, has in

12. The testimony elicited was as follows:

[BY THE STATE:] Det. Trippel, I want to ask you about the conversation that you had with John Adams in which he stated that the knife had been used in the murder of Donna Vick.

A. Yes, sir.

\* \* \*

Q. [W]ould you please relate to the members of the jury the complete conversation that you had with John Adams while you were in the car there in Lancaster.

A. After we contacted Lancaster Police Department and we asked DeSoto [Police Department] to check on Mrs. Vick, I had a conversation with John Adams. I wanted to know what he knew about this murder, what he had seen, and he told me that several days earlier, while he was on the street panhandling, [appellant] and Mrs. Vick, were riding in her white Chrysler New Yorker.

He stated that they picked him up and took him back to her home. While at home, Mrs. Vick had fixed [appellant] and John Adams some lunch, and while [appellant] and John Adams were eating, [appellant] told John Adams that he was going to rob Mrs. Vick, and he took the knife belonging to John Adams.

John Adams said he didn't believe [appellant], but when Mrs. Vick went into the bedroom, [appellant] followed her into the bedroom. [Adams] said that while he was eating, he heard Miss [sic] Vick yelling, saying, [appellant], why are you doing this? John Adams said he got up and went into the bedroom, and when he went into the bedroom, he saw [appellant] stabbing Mrs. Vick on the bed.

Of course, this is—this—he didn't know what to think of that, but after [appellant] was stabbing her, the knife broke; and that [appellant] went back into the kitchen and got a kitchen knife.

[Appellant] went back into the bedroom and continued to stab Mrs. Vick, where he killed her.

John Adams then said that [appellant] told him to get her property and that they took her TV, computer equipment, loaded it up in a white Chrysler New Yorker, and then they—they left the scene.

open court in person waived his right of trial by jury in writing in accordance with Articles 1.13 and 1.14; provided, however, that it shall be necessary for the state to introduce evidence into the record showing the guilt of the defendant and said evidence shall be accepted by the court as the basis for its judgment and in no event shall a person charged be convicted upon his plea without sufficient evidence to support the same. The evidence may be stipulated if the defendant in such case consents in writing, in open court, to waive the appearance, confrontation, and cross-examination of witnesses, and further consents either to an oral stipulation of the evidence and testimony or to the introduction of testimony by affidavits, written statements of witnesses, and any other documentary evidence in support of the judgment of the court. Such waiver and consent [to stipulate] must be approved by the court in writing, and be filed in the file of the papers of the cause.

By its plain language, Article 1.15 applies only to cases in which a jury trial has been waived. *See also McClain v. State*, 730 S.W.2d 739, 742 (Tex.Crim.App.1987). Because appellant's case was tried by a jury, the requirements regarding stipulations of evidence found in Article 1.15 have no application here.[13] *McClain*, 730 S.W.2d at 744, n. 1; *Messer v. State*, 729 S.W.2d 694, 699 (Tex.Crim.App.1986). Point of error nine is overruled.

## PUNISHMENT PHASE OF TRIAL

Appellant asserts in his tenth point of error that the "12–10 Rule" of Article 37.071 §§ 2(d)(2) and 2(f)(2) is unconstitutional. We have previously addressed and rejected this contention. Appellant raises no new arguments here. *Cantu v. State*, 939 S.W.2d 627, 644 (Tex.Crim.App.), *cert. denied*, 522 U.S. 994, 118 S.Ct. 557, 139

L.Ed.2d 399 (1997). Point of error ten is overruled.

## PAROLE LAW

In his sixth point of error, appellant claims that the trial court erred in denying his motion to present evidence on the law of minimum parole eligibility. In his seventh point, appellant asserts he should have been allowed to voir dire prospective jurors on this issue.

▪ We have noted in a number of cases that parole is traditionally not a matter for jury consideration in a Texas capital murder trial. Thus, we have held that it is not error for a trial court to refuse to allow voir dire or admit testimony concerning parole. *See, e.g., Griffith v. State*, 983 S.W.2d 282, 289 (Tex.Crim.App.1998). Points of error six and seven are overruled.

## CUMULATIVE ERROR

▪ Appellant asserts in his fifteenth and sixteenth points of error that the "cumulative effect" of all of the above errors denied him due process under the federal constitution and due course of law under the Texas constitution. A number of errors may be found harmful in their cumulative effect. *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex.Crim.App.1999). However, such cumulative error has not been shown here. Points of error fifteen and sixteen are overruled.

Finding no reversible error, we affirm the judgment of the trial court.

KELLER, J., concurred in the judgment.

---

**13.** We also note that Article 1.13(b) provides that defendants in a capital felony case in

which the state seeks the death penalty cannot waive trial by jury.