**Opinion issued April 2, 2015**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-14-00384-CR**

———————————

**KEVIN GERARD EDWARDS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 183rd District Court**
**Harris County, Texas**
**Trial Court Case No. 1409119**

---

**MEMORANDUM OPINION**

Kevin Gerard Edwards appeals from his conviction of felony murder for the death of Billy Ray Hatch. In three issues, Edwards argues that insufficient evidence supports his conviction because no eyewitness saw him shoot Billy, the State presented testimony in violation of the Confrontation Clause of the Sixth

Amendment to the United States Constitution, and he received ineffective assistance of counsel at trial. We affirm.

## Background

On the afternoon of July 14, 2011, seven men engaged in a gunfight on a Houston street. Billy received a fatal wound when a 9 mm handgun bullet entered the back of his head and penetrated his brain. A jury, concluding that Edwards fired the fatal shot, convicted him of felony murder.

On the day of the shooting, Darrell "B.G." Broussard, Jarell "J.J." Livingston, and Kevin "Fat Cat" Smithers were playing video games at a home on Marcolin Street in Houston. Edwards and Billy, along with Timothy Myers, traveled by car to Marcolin Street and stopped near the house. Billy drove, Myers sat in the front passenger seat, and Edwards rode in the back seat on the driver's side. The men had at least three guns with them in the car: a 9 mm handgun, another handgun, and an AK-47 rifle. The 9 mm handgun belonged to Billy's wife, and Edwards had seen it on multiple occasions. Lawrence Hatch and Derek Brown were in another car on the street. Edwards, Lawrence, and Billy were cousins, and Edwards had known Myers and Brown for several years. When Edwards, Billy, and Myers arrived, several other individuals were already present, including Broussard, Livingston, Smithers, and someone identified only as "the person from New Orleans."

Livingston, holding a chrome-plated gun, engaged in an argument with Lawrence. Billy exited the vehicle, put his arm around Broussard, and walked down the street with him. Livingston warned Lawrence, "If you cross my line, I'm going to fire you up." At some point after this, Billy and Myers got back into the car in which they had arrived, and Billy began to drive away in the direction of Knox Street. Lawrence and Brown also began to drive away.

Someone fired a shot while the vehicles were leaving, causing Edwards and Billy to duck. Billy stopped his vehicle and exited it, holding a rifle. He then jumped over a ditch adjacent to Marcolin Street and began to fire towards the house. Myers also exited the vehicle, walked to the middle of the street, and began shooting a black and gray handgun. Meanwhile, Lawrence left Brown's vehicle, holding a rifle like Billy's, and began shooting back towards the house on Marcolin Street. By this time Myers, Billy, and Lawrence were all standing in Marcolin Street, with Myers behind and between Billy and Lawrence, shooting over their heads. Edwards remained in the car. Throughout this time, the group near the house on Marcolin Street was firing shots in the general direction of Myers, Billy, Lawrence, and Billy's car.

According to Edwards, Billy fell backwards, at which point Edwards left the car, grabbing a "shiny silver" gun on the console, and began firing the gun "around" Lawrence and Myers as he ran toward Billy. Brown contradicted this

3

testimony, testifying that he saw Edwards firing "[a]t that same moment . . . [at] that same exact time" that Billy fell. According to Edwards, he fired "no more than two" shots, at which point he ran out of bullets. When he saw that the group near the house was still firing, he began to retreat. Brown pulled up in a car, told Edwards to get in, and Edwards complied.

Brown drove a short distance and stopped the vehicle on Ellington Street, where Edwards met one of his cousins, Delores, and Lawrence and Myers caught up with them. Myers collected all of the guns and left the scene. Edwards and Delores returned to where Billy lay and observed him bleeding from his head. Someone called an ambulance, and Edwards left the scene after the ambulance took Billy away.

Dr. Ryan Kitagawa, chief neurosurgeon at Ben Taub Hospital, performed brain surgery on Billy. Billy had been shot in the back of his head. During surgery, Dr. Kitagawa recovered from Billy's brain a bullet fragment later identified as part of a 9 mm bullet. Despite Dr. Kitagawa's efforts, Billy died approximately 24 hours after surgery.

Meanwhile, the Houston Police Department began investigating the scene shortly after the shooting stopped. Officers found twenty-one shell casings for bullets of various calibers: eight 9 mm casings, twelve 7.62 mm by 39 mm casings, and one .40 caliber casing. Police also recovered one fragment of a fired, jacketed

4

bullet and one intact, fired, jacketed, .45-caliber bullet. The 9 mm and .40 bullets were fired from handguns, while the 7.62 mm by 39 mm rounds were fired from one or more rifles. Based on ballistics analyses of the casings, intact bullet, bullet fragments, and recovered weapons, at least five different weapons were fired at the scene of the shooting: a 9 mm handgun, two 7.62 mm–caliber rifles, a .40 S&W handgun, and a .45-caliber weapon. The bullet fragment extracted from Billy's brain was fired from the same 9 mm handgun as all eight of the 9 mm casings found by police.

In August 2011, Edwards gave a statement to Officer X. Avila of the Houston Police Department's Homicide Division. He admitted to being at the scene and seeing Livingston holding a pistol, but denied having a gun, shooting a gun, seeing Lawrence with a rifle, or being present when Billy was shot. He later gave a second statement, in which he admitted to having and firing Billy's wife's gun; he testified that he omitted these facts from his first statement out of fear that he would get in trouble. Edwards testified at trial that he told lies in both statements. At trial, he denied that he fired a 9 mm pistol.

Edwards was charged with felony murder. Dr. Kitigawa, Officer Avila, Brown, Broussard, and Edwards testified at trial, among others. The medical examiner who performed the autopsy of Billy was unavailable to testify, but the State presented testimony of Dr. Alex John, an Assistant Medical Examiner for the

5

Harris County Institute of Forensic Sciences, who reviewed the autopsy report and testified about his own conclusions from the photographs contained in the report. The jury convicted Edwards and assessed a punishment of 10 years' incarceration. Edwards appeals.

## Legal Sufficiency

In his first issue, Edwards argues that the State presented legally and factually insufficient evidence to demonstrate that Edwards shot Billy or caused his death. The State responds that the evidence is sufficient to support the conviction.

### A. Standard of review

We review a challenge to the sufficiency of the evidence under the standard announced in *Jackson v. Virginia*, 443 U.S. 307, 318–20, 99 S. Ct. 2781, 2788–89 (1979). *See Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex. Crim. App. 2010). Under the *Jackson* standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 317–19, 99 S. Ct. at 2788–89; *Laster v. State*, 275 S.W.3d 512, 517–18 (Tex. Crim. App. 2009). We consider both direct and circumstantial evidence and all reasonable inferences that may be drawn from the evidence in making our determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

The *Jackson* standard defers to the factfinder to resolve any conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from "basic facts to ultimate facts." *Jackson*, 443 U.S. at 318–19, 99 S. Ct. at 2788–89; *Clayton*, 235 S.W.3d at 778. We presume that the factfinder resolved any conflicts in the evidence in favor of the verdict and defer to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793.

Evidence is insufficient when (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, (2) the evidence conclusively establishes a reasonable doubt, or (3) the acts that the State alleges, if true, do not constitute the charged crime. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007); *see Jackson*, 443 U.S. at 314–19, 99 S. Ct. at 2786–89. If an appellate court finds the evidence to be insufficient under this standard, it must reverse the judgment and enter an order of acquittal. *See Tibbs v. Florida*, 457 U.S. 31, 41, 102 S. Ct. 2211, 2217 (1982).

## B. Legally sufficient evidence supports the conviction

To prove that Edwards committed felony murder, the State had to show that he "commit[ted] or attempt[ed] to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commit[ted] an act clearly dangerous to human life that causes the death of an individual." TEX. PENAL CODE § 19.02(b)(3)

7

(West 2011). A person who knowingly discharges a firearm at or in the direction of an individual or group of individuals commits the offense of felony deadly conduct. *Id.* § 22.05(b)(1) (West 2011). The State charged that Edwards committed the felony offense of deadly conduct by discharging a firearm "at and in the direction of Darrell Broussard, Kevin Smithers, Jerel Lungston, and Denzell Lawson," that the commission of that offense constituted an act clearly dangerous to human life, and that in the course of committing that offense he caused the death of Billy Ray Hatch.

The trial evidence was sufficient to support the jury's conviction on this charge. Edwards admitted in his second statement to Officer Avila that he shot the 9 mm handgun belonging to Billy's wife in the direction of Broussard, Smithers, and Livingston. The bullet found in Billy's brain matched the same handgun. No witness testified that any of the men ever exchanged guns during the gunfight. Thus, the only reasonable inference from this evidence is that Edwards, the only person who fired the gun in question during the gunfight, fired the fatal shot.

Edwards claimed at trial that Myers fired the fatal shot and that Edwards fired shots only in self-defense in an attempt to defeat the State's allegation that Edwards killed Billy while committing a felony. But the jury was not required to accept this version of events. "As factfinder, the jury is entitled to judge the credibility of witnesses, and can choose to believe all, some, or none of the

testimony presented by the parties." *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). Further, the statements of Edwards and his other witnesses do not conclusively prove that he acted in self-defense. *See London v. State*, 325 S.W.3d 197, 203 (Tex. App.—Dallas 2008, pet. ref'd); *see also Denman v. State*, 193 S.W.3d 129, 132–33 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).

Edwards also complains that no witness testified that he or she actually saw Edwards shoot Billy. According to Edwards, the only evidence connecting him to the shooting was his "mere presence at the scene." This argument is contradicted by the evidence that we have already discussed, which placed the murder weapon in Edwards's hands when Billy was shot, as well as by Brown's testimony, which placed Edwards running towards Billy and firing a weapon when Billy fell. The State was not required to present eyewitness testimony of anyone who actually saw the fatal shot. *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986) ("Evidence as to the identity of the perpetrator of an offense can be proved by direct or circumstantial evidence."); *Shah v. State*, 403 S.W.3d 29, 35 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (State not required to produce eyewitness to prove occurrence of felony or support conviction of same); *Greene v. State*, 124 S.W.3d 789, 792 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). The law simply requires the evidence, direct and circumstantial, to reach such a level

that a rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 317–19, 99 S. Ct. at 2788–89; *Laster*, 275 S.W.3d at 517–18.

Applying the *Jackson* standard, we hold that a rational factfinder could have found that Edwards committed each element of felony murder as charged, and the evidence was therefore sufficient to support the conviction. *See Jackson*, 443 U.S. at 317–19, 99 S. Ct. at 2788–89. We overrule Edwards' first issue.

## Confrontation Clause Violation

In his second issue, Edwards argues that Dr. John's testimony violated the Confrontation Clause of the Sixth Amendment because Dr. John did not perform Billy's autopsy. The State argues that Edwards failed to preserve his complaint by objecting in the trial court and, even if Edwards preserved error, Dr. John's testimony was nontestimonial because it was not offered for the truth of the matter asserted.

### A.     Standard of review

Under the Confrontation Clause of the Sixth Amendment to the Constitution of the United States, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST., Amend. VI. "The Confrontation Clause does not prohibit any use of testimonial hearsay; it only prohibits the use of testimonial hearsay to prove the truth of the

matter asserted." *Wood v. State*, 299 S.W.3d 200, 213 (Tex. App.—Austin 2009, pet. ref'd) (citing *Crawford v. Washington*, 541 U.S. 36, 59, 124 S. Ct. 1354, 1369 (2004)). An appellant who complains that the trial court admitted evidence in violation of the Confrontation Clause must preserve that error by making a specific objection. TEX. R. APP. P. 33.1(a); *Wright v. State*, 28 S.W.3d 526, 536 (Tex. Crim. App. 2000), *superseded by statute on other grounds as noted by Coleman v. State*, No. AP-75478, 2009 WL 4696064, at *11 n.46 (Tex. Crim. App. Dec. 9, 2009) (per curiam). When the appellant's objection to the trial court does not comport with his issue on appeal, he has not preserved any error for review. TEX. R. APP. P. 33.1; *Sorto v. State*, 173 S.W.3d 469, 476 (Tex. Crim. App. 2005). Accordingly, a hearsay objection does not preserve error for a Confrontation Clause challenge. *Wright*, 28 S.W.3d at 536; *see also Dewberry v. State*, 4 S.W.3d 735, 752 n.16 (Tex. Crim. App. 1999) (appellant who objected only to hearsay nature of testimony failed to preserve error under Confrontation Clause); *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990) ("Even constitutional errors may be waived by failure to object at trial.").

## B. Edwards failed to preserve error

Edwards objected to Dr. John's testimony regarding the autopsy report as follows:

> I'm going to object at this point in time to the doctor testifying. I noticed on the Medical Examiner's report that somebody by the name

11

of Marissa Fina [phonetic] did the autopsy. This is going to be hearsay.

I think the status of the law is that a supervisor would be allowed to come in and testify if for some reason—I mean, I know that in drug cases a testimony as to what somebody else did or a conclusion somebody else made, what analysis somebody else did, what they saw, it's still hearsay. He is not a supervisor. He certainly doesn't have the time and experience I assume to be a supervisor. So, what we're doing—Ms. Fina probably is more seasoned, more experienced than this doctor. I'm thinking that the state of the law is using drug analogy cases, a supervisor can certainly come in and testify. But I don't think he can give testimony based on this report.

This objection is based solely on the purported hearsay nature of the testimony; there is no suggestion of any constitutional infirmity in its admission.

We hold that Edwards waived his second issue by failing to preserve it at trial.[1]

### Ineffective Assistance of Counsel

In his final issue, Edwards argues that he received ineffective assistance of counsel at trial. Specifically, he argues that if this Court holds that he waived his second issue—which we do—then we must hold that his attorney rendered ineffective assistance by failing to object to Dr. John's testimony on Confrontation Clause grounds. According to Edwards, this inaction cannot constitute a trial strategy, harmed him, and requires a finding of ineffective assistance. The State

---

[1] We note that if we were to reach the merits of this issue, we would overrule it for the reasons set forth in our discussion of Edwards's third issue: the admission of Dr. John's testimony did not, in fact, run afoul of the Confrontation Clause.

responds that such an objection would have been overruled and that, in any event, Edwards was not harmed because Dr. Kitagawa's testimony established the same facts as Dr. John's testimony.

## A.    Standard of review

The standard of review for evaluating claims of ineffective assistance of counsel is set forth in *Strickland v. Washington*, which dictates that a defendant is entitled to "reasonably effective assistance."  466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).  A defendant is not, however, ensured "errorless counsel or counsel whose competency is judged by hindsight."  *Calderon v. State*, 950 S.W.2d 121, 126 (Tex. App.—El Paso 1997, no pet.).

There are two prongs to a *Strickland* analysis: a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's unprofessional error, there is a reasonable probability that the result of the proceedings would have been different.  *Strickland*, 466 U.S. at 687–94, 104 S. Ct. at 2064–68; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).   A reasonable probability is a "probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that counsel's performance is within a wide range of reasonable

13

professional assistance and trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006); *Thompson*, 9 S.W.3d at 813. Edwards has the burden to establish both prongs of the *Strickland* test by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). A failure to make a showing under either prong defeats an ineffective-assistance claim. *See Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003).

Additionally, allegations of ineffectiveness of counsel must be firmly rooted in the record. *Thompson*, 9 S.W.3d at 814; *Bone v. State*, 77 S.W.3d 828, 833 & n.13 (Tex. Crim. App. 2002). When the record is silent, we may not speculate to find trial counsel ineffective. *See Ex parte Varelas*, 45 S.W.3d 627, 632 (Tex. Crim. App. 2001). In the absence of evidence of counsel's reasons for the challenged conduct, an appellate court commonly will assume a strategic motivation if any can possibly be imagined and will not conclude that the challenged conduct constitutes deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it. *Id.*

When an appellant argues that his counsel rendered ineffective assistance by failing to make an objection, he must show that the trial court would have erred in overruling the objection. *Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996); *Jacoby v. State*, 227 S.W.3d 128, 131 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

**B.      Edwards does not demonstrate ineffective assistance by trial counsel**

The record is silent regarding Edwards's trial counsel's reasons for not objecting on Confrontation Clause grounds.  Edwards did not file a motion for new trial, so trial counsel has had no opportunity to explain his actions or inactions.  Accordingly, we must assume that he had a strategic motivation for his conduct if any such motivation can be imagined.  *Ex parte Varelas*, 45 S.W.3d at 632.

If trial counsel had objected to Dr. John's testimony as violative of the Sixth Amendment, the trial court would have had to analyze that objection by considering whether Dr. John was offering testimonial statements covered by the Sixth Amendment's protections.  *Crawford*, 541 U.S. 36, 68, 124 S. Ct. 1354, 1374.  If a statement is made by a declarant who does not testify and the statement is testimonial, then it is not admissible even if a hearsay exception applies or if the testimony bears "particularized guarantees of trustworthiness."  *Id.*, 541 U.S. at 60, 124 S. Ct. at 1369.  "Testimonial" statements include:

1.      "*ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially;"

2.      "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions;"

3. "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial;" and

4. "[s]tatements taken by police officers in the course of interrogations."

*Id.*, 541 U.S. at 51–52, 124 S. Ct. at 1364. Likewise, the admission of testimonial scientific evidence in documentary form violates the Confrontation Clause if its admission is sponsored by an expert other than the person who performed the analysis or observed the test in question. *Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2710–2712 (2011).

On the other hand, an expert may disclose facts from the report of an autopsy conducted by another person without violating the Confrontation Clause if the expert relied on those facts in coming to his or her own conclusions. *Williams v. Illinois*, 132 S. Ct. 2221, 2228 (2012). Photographs taken during an autopsy are not statements. TEX. R. EVID. 801(a); *Wood v. State*, 299 S.W.3d 200, 214 (Tex. App.—Austin 2009, pet. ref'd). Autopsy photographs are therefore nontestimonial in nature for purposes of the Confrontation Clause. *Herrera v. State*, 367 S.W.3d 762, 773 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Wood*, 299 S.W.3d at 214.

The State did not offer the autopsy report itself for admission into evidence. Rather, it asked Dr. John for his conclusions based on his review of the photographs taken during the autopsy. Dr. John testified that he had reviewed the

16

photographs and determined the cause of death to be "fairly obvious": a "[g]unshot wound of head with penetration of skull and brain." He was able to determine that the trajectory of the bullet was "back to front and upwards." The State offered one of the photographs, showing Billy's head and face, into evidence. Edwards objected on hearsay grounds, and the trial court overruled the objection.

Dr. John testified only regarding his own review and analysis of the autopsy photographs. Those photographs were nontestimonial for purposes of a Confrontation Clause analysis. *See Herrera*, 367 S.W.3d at 773; *Wood*, 299 S.W.3d at 214. Dr. John did not offer any testimony based on the autopsy report, nor did he sponsor admission of the report itself. The admission of his testimony therefore did not violate the Confrontation Clause.

Trial counsel was not required to object to Dr. John's testimony on a basis that did not prohibit its admission. Edwards therefore cannot make the first showing required by *Strickland*: that his trial counsel erred. *Strickland*, 466 U.S. at 687–94, 104 S. Ct. at 2064–68; *Thompson*, 9 S.W.3d at 812. Because Edwards has failed to show that his trial counsel provided ineffective assistance under *Strickland*, we overrule his third issue.

## Conclusion

Because we have found no error, we affirm the judgment of the trial court.


Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Brown and Lloyd.

Do not publish. Tex. R. App. P. 47.2(b).