# IN THE COURT OF APPEALS

## SIXTH JUDICIAL DISTRICT OF TEXAS

### AT TEXARKANA

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
10/7/2016 9:59:00 AM
DEBBIE AUTREY
Clerk

| | | |
|---|---|---|
| **LAROYCE DEMOND ALLEN** | § | |
| **Appellant** | § | |
| | § | |
| **VS.** | § | **No. 06-16-00142-CR** |
| | § | |
| **STATE OF TEXAS** | § | |
| **Appellee** | § | |

## ANDERS BRIEF

## APPEALED FROM CAUSE NO. CR 15-164 IN THE FOURTH JUDICIAL

## DISTRICT COURT OF RUSK COUNTY, TEXAS

## ORAL ARGUMENT IS NOT REQUESTED

**CLAY THOMAS, P.C.**
**ATTORNEY FOR APPELLANT**
**3548 NE STALLINGS DRIVE**
**NACOGDOCHES, TEXAS 75965**
**936.715.7144**
**877.899.0382 (FACSIMILE)**
**STATE OF TEXAS BAR CARD**
**NUMBER 24088520**
**clay.thomas@claythomaspc.com**

THE PARTIES INVOLVED


MR. LAROYCE DEMOND ALLEN          APPELLANT
TDCJ No. 02078253
Joe F. Gurney Unit
1385 FM 3328
Palestine, Texas 75803


MR. CLAY DEAN THOMAS              ATTORNEY FOR APPELLANT
3548 NE Stallings Drive           (APPEAL)
Nacogdoches, Texas 75965


MR. JEFFREY SANDERS               ATTORNEY FOR APPELLANT
120 South Broadway                (TRIAL)
Suite 112
Tyler, Texas 75702


MR. MICHAEL ELWOOD                DISTRICT ATTORNEY
JIMERSON                          RUSK COUNTY, TEXAS
115 North Main Street
Henderson, Texas 75652


MR. ZACHARY JAMES WAVRUSA         ASSISTANT DISTRICT ATTORNEY
115 North Main Street             RUSK COUNTY, TEXAS
Henderson, Texas 75652


JUDGE JAMES CLAY GOSSETT          JUDGE PRESIDING
115 North Main Street             4 JUDICIAL DISTRICT COURT OF
Henderson, Texas 75652            RUSK COUNTY, TEXAS

# Contents

JURISDICTION OF THE COURT.................................................................... 1

STATEMENT OF THE CASE ...................................................................... 1

STATEMENT OF FACTS ............................................................................ 2

ISSUES PRESENTED FOR REVIEW ........................................................ 5

ARGUMENT AND AUTHORITIES............................................................ 6

GROUND OF ERROR................................................................................. 7

ISSUES PRESENTED FOR REVIEW ........................................................ 7

1. The Indictment Is Sufficient As A Matter Of Law ................................... 7

2. There Were No Improper Adverse Pretrial Rulings Affecting The Course Of The Trial. ................................................................................ 8

3. There Were No Adverse Improper Adverse Rulings During The Trial On Objections Or Motions Had Been Improperly Made Such That They Created An Adverse Effect On The Result Of The Trial. ........................... 11

4. There Were No Adverse Improper Rulings On Post-Trial Motions....... 14

5. Jury Selection Was Properly Conducted In Order That A Fair And Impartial Jury Was Obtained.................................................................. 14

6.    **The Jury Instructions Were Properly Formulated.** ............................... 14

7.    **The Evidence Was Sufficiently Adduced At Trial To The Offense Upon Which The Conviction Was Based.** ................................................ 16

8.    **There Was No Failure By Trial Counsel To Object To Fundamental Error.** ............................................................................................ 18

9.    **There Were No Improper Adverse Rulings During The Punishment Phase On Objections Or Motions.** ....................................................... 18

10.    **The Sentence Was In The Applicable Range Of Punishment.** ............ 19

11.    **The Written Judgment Accurately Reflects The Sentence Imposed And Credit Was Properly Applied.** ............................................... 19

12.    **Based Upon The Record, Appellant Did Not Receive Ineffective Assistance Of Trial Counsel.** .......................................................... 19

**CONCLUSION** ........................................................................................ 20

**PRAYER** ................................................................................................ 20

**CERTIFICATE OF COMPLIANCE** ........................................................... 21

**CERTIFICATE OF SERVICE** .................................................................... 21

**Cases**

*Hernandez v, State*, 726 S.W.2d 53 (Tex. Crim. App. 1986)...................................20

*Holland v. State*, 761 S.W.2d 307 (Tex. Crim. App. 1988) ....................................20

*Meza v. State of Texas*, 206 S.W.3d 684 (Tex. Crim. App. 2006) ...........................6

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) 20, 21

*Wright v. State*, 28 S.W.3d 526 (Tex. Crim. App. 2000) ....................................8, 16

**Statutes**

Tex. Code Crim. Proc. Ann. art. 12.01 .....................................................................8

Tex. Code Crim. Proc. Ann. art. 21.02 .....................................................................7

Tex. Code Crim. Proc. Ann. art. 36.14 ...................................................................14

Tex. Penal Code Ann. § 12.32(a)............................................................................18

Tex. Penal Code Ann. § 12.32(b) ...........................................................................18

Tex. Penal Code Ann. § 22.011 ..............................................................................18

Tex. Penal Code Ann. § 22.011(a)(2)........................................................................8

**Rules**

Tex. R. App. P. 22....................................................................................................1

Tex. R. App. P. 38.............................................................................................5

Tex. R. App. P. 9.4(i)(1) ...............................................................................21

**Constitutional Provisions**

Tex. Const. art. V, § 6......................................................................................1

# IN THE COURT OF APPEALS

## SIXTH JUDICIAL DISTRICT OF TEXAS

## AT TEXARKANA

| | | |
|---|---|---|
| **LAROYCE DEMOND ALLEN** | § | |
|    Appellant | § | |
| | § | |
| **VS.** | § | **No. 06-16-00142-CR** |
| | § | |
| **STATE OF TEXAS** | § | |
|    Appellee | § | |

TO THE HONORABLE COURT OF APPEALS

## ANDERS BRIEF

## JURISDICTION OF THE COURT

This is an Anders appeal from a final judgment of conviction and sentence entered on June 24, 2016 by the 4th Judicial District Court of Rusk County, Texas. Appellant was found guilty in a jury trial for Sexual Assault of a Child. (4 R.R. 99) The Court of Appeals has jurisdiction over this matter in accordance with Rule 22 of the Texas Rules of Appellate Procedure and Article 5, § 6 of the Constitution of the State of Texas.

## STATEMENT OF THE CASE

The Appellant was charged by indictment with Sexual Assault of a Child. (3 R.R. 7) (1 C.R. 5) The Appellant entered a plea of not guilty (3 R.R. 8) and a jury

trial was had beginning on June 23, 2016. On June 24, 2016, the jury returned a verdict of guilty. (4 R.R. 99) On that day, the trial then proceeded into the punishment phase before the jury. The jury assessed punishment to be twenty years in the Texas Department of Criminal Justice – Institutional Division. (4 R.R. 125) The trial court certified that the Appellant had the right to appeal. (1 C.R. 98) Appellant timely filed notice of appeal on 20 July 2016. (1 C.R. 101) The record of the case consists of five volumes of Transcript and one volume provided by the District Clerk. Reference to the Transcript will be (Volume Number, R.R., Page Number) For example, the 1st Volume page 30 will be referenced (1 R.R. 30). Clerk's Record will be referenced likewise by C.R.

## STATEMENT OF FACTS

In the early morning hours on June 10, 2015, Herbert Adams discovered that his granddaughter, XXXX, was not asleep in her bed in the home he shared with his daughter Petrice Adams, her husband, Laroyce Allen, and Petrice's younger daughter, H. (3 R.R. 72) Upon discovery of the missing grandchild, Herbert Adams awakened Petrice Adams and Laroyce Allen to inform them that XXXX was not in the residence. After a brief search of the home and the grounds, the parties discovered a Jeep owned by Herbert Adams was missing. (3 R.R. 72)

Throughout the early morning hours, a search was conducted for XXXX. Petrice Adams and Laroyce Allen located the Jeep soon thereafter and lay in wait

for the return of XXXX. (4 R.R. 23) After several hours, Petrice Adams was taken home by her husband so that she could prepare her younger child for school. Upon Laroyce Adams' return to the earlier location of the Jeep, he discovered that it had been moved. (4 R.R. 24) Retrieving his wife, they both searched neighborhoods and contacted family friends in an attempt to find XXXX.

During this period, they discovered the home of Davonte Wilson, a young man whose parents worked at night. The couple knocked on the door of the home but were unable to receive a response. Soon thereafter, neighborhood boys volunteered to contact XXXX and Mr. Wilson. Subsequently, XXXX left the Wilson home and entered the vehicle with the couple. (4 R.R. 25)

Upon return to the home of Herbert Adams, Laroyce Allen began to strip the closet and drawers of XXXX's room, dumping the contents of those on the floor, telling her to clean it up as punishment. (4 R.R. 27) In the trial, there was conflicting testimony as to what party (whether Herbert Adams or Petrice Adams) was first told the reasons for XXXX's behavior, but all testimony indicated XXXX had accused Laroyce Allen of sexually assaulting his stepdaughter. (3 R.R. 74) (3 R.R. 178-179) At some instance on that afternoon, Herbert Adams was given a letter that XXXX claimed to have been given to her by Laroyce Allen. (3 R.R. 75) (5 R.R. State's Exhibit 4) The letter was purported to describe past sexual acts between Laroyce Allen and XXXX and suggested a quid pro quo arrangement whereby Laroyce Allen

would continue financial remuneration for sexual acts. (3 R.R. 106) (3 R.R. 138) Upon receipt of the letter, he asked Petrice Adams for any other writings from her husband to use as exemplars.

Complaint was made to law enforcement authorities and the matter was investigated by the Rusk County Sheriff's Department. During the investigation and search of the bedroom closet of Laroyce Allen, a yellow notebook filled with writings written by Laroyce to his wife was discovered. (5 R.R. State's Exhibit 5) These were taken into evidence. Contemporaneous to the search, a purported contract for sexual services was also found among the belongings in the Allen's bedroom. (3 R.R. 53) (3 R.R. 111-114) (5 R.R. State's Exhibit 6)

Shortly thereafter, XXXX was examined by SANE Nurse Susan Camazine.

On June 11, 2015, an affidavit regarding the sexual assault was sworn by Ben Reynolds, the lead investigator. On June 12, 2015, a warrant was issued for the arrest of Laroyce Demond Allen for Sexual Assault. On August 4, 2015, Laroyce Demond Allen was indicted for the sexual assault of a child younger than 17 years of age. (1 C.R. 5)

On the 28th day of August, 2015, the Honorable R. Darryll Bennett was appointed as counsel for Mr. Allen. (1 C.R. 17) On August 31, 2015, Mr. Bennett's counsel was discharged and the honorable Joe Shumate was appointed as Mr. Allen's counsel. (1 C.R. 21) On September 3, 2015, Mr. Shumate made a Motion to

4

Withdraw as Counsel citing a conflict of interest with another case. (1 C.R. 22-23) On September 8, 2015, the court ordered a Substitution of Counsel and the Honorable Jeff Sanders was appointed as Mr. Allen's counsel. (1 C.R. 24)

## ISSUES PRESENTED FOR REVIEW

The following issues are presented for appellate review [see Texas R. App. P. 38].The undersigned counsel's review of the record and law reveals no matters of reversible error or issues that can be advanced in good faith. Thus, the questions raised in this Anders appeal pertain to the following issues:

(1) Whether the indictment was sufficient as a matter of law.

(2) Whether any adverse pretrial rulings affecting the course of the trial were improper.

(3) Whether any adverse rulings during the trial on objections or motions had been improperly made such that they created an adverse effect on the result of the trial.

(4) Whether there were any adverse rulings on post-trial motions.

(5) Whether jury selection was properly conducted in order that a fair and impartial jury may have been obtained.

(6) Whether jury instructions were properly formulated.

(7) Whether the evidence was sufficiently adduced at trial to the offense upon which the conviction was based.

(8) Whether there was any failure by trial counsel to object to fundamental error.

(9) Whether there were any improper adverse rulings during the punishment phase on objections or motions.

(10) Whether the sentence was in the applicable range of punishment.

(11) Whether the written judgment accurately reflects the sentence imposed and whether any credit was properly applied.

(12) Based upon the record, whether Appellant received ineffective assistance of trial counsel.

## ARGUMENT AND AUTHORITIES

This brief is an Anders brief in support of appellate counsel's motion to withdraw. In compliance with the Anders procedure, as set forth in *Meza v. State of Texas*, 206 S.W.3d 684 (Tex. Crim. App. 2006), appellate counsel has filed the following:

1. Motion to Withdraw.

2. Notice of filing of Anders brief, which includes a copy of the letter to the Appellant informing him that:

   a. Counsel has provided him with a copy of the brief.

   b. Counsel has informed Appellant the right to review the record.

c. Counsel has informed Appellant of the right to file a brief or other response in his own behalf, and

d. Counsel has informed Appellant of the right to pursue a petition for discretionary review in the Texas Court of Criminal Appeals, should the court of appeals deny him relief on appeal.

## GROUND OF ERROR

NO ARGUABLE ISSUES OF REVERSIBLE ERROR EXIST IN THE CASE

## ISSUES PRESENTED FOR REVIEW

**1. The Indictment Is Sufficient As A Matter Of Law**

Tex. Code Crim. Proc. Ann. art. 21.02 codifies the requisites for an indictment in the State of Texas. The indictment in this matter states it is "In the name and authority of The State of Texas"; that the Grand Jurors are empaneled in Rusk County, Texas which is the same county in which the District Court sits; and appears to be the act of that grand jury in Rusk County. The indictment identified the Defendant by his proper name, Laroyce Demond Allen and alleges that the offense occurred in Rusk County, Texas. The indictment alleges the offense took place on or about the 15th day of June, 2015, a date anterior to the indictment and not so remote that the prosecution of the offense would be barred by limitation. The indictment states that Laroyce Demond Allen did intentionally and

knowingly cause the penetration of the mouth of Jane Smith (pseudonym), a child younger than 17 years of age, by his sexual organ. Clearly the language is worded in plain and intelligible words. The indictment concludes with "against the peace and dignity of the State" and is signed by the Foreman of the Grand Jury. (1 C.R. 5)

Although the Appellant was already in custody on June 15, 2015, "[T]he 'on or about' language of an indictment allows the state to prove a date other than the one alleged as long as the date proven is anterior to the presentment of the indictment and within the statutory limitation period. *Wright v. State*, 28 S.W.3d 526, 532 (Tex. Crim. App. 2000). There is no limitation for a sexual assault under Section 22.011(a)(2) of the Tex. Penal Code Ann. See Tex. Code Crim. Proc. Ann. art. 12.01.

Thus, there exists no deficiency in the form or content of the indictment in this matter.

## 2. There Were No Improper Adverse Pretrial Rulings Affecting The Course Of The Trial.

During voir dire, Appellant's counsel attempted to elicit juror expectations as to what type of evidence they may anticipate hearing in a trial. The Prosecutor objected and a bench conference was had:

> MR. JIMERSON: I object. These are commitment questions. They're a little bit unorthodox, because he's soliciting from the juror what they're going to

demand, but he's committing them to the facts. We're going to have to have DNA to get a conviction and these other things. It's just an outstandingly clever commitment question is the State's position. We object to it.

MR. SANDERS: I don't think -- I'm just asking what they might expect to hear.

THE COURT: I'll sustain the objection on that. (2 R.R. 74-75)

While an attorney cannot attempt to bind or commit a prospective juror to a verdict based on a hypothetical set of facts, this abstract matter though easily stated, has been problematic in its application. Case law has not always been clear and consistent but a few common principles are apparent. Commitment questions are those that commit a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact. Often, such questions ask for a "yes" or "no" answer, in which one or both of the possible answers commits the jury to resolving an issue a certain way.

Therefore, in the context of voir dire, a query regarding the expectations of a juror informs both the prosecution or defense of any bias. This is the very essence of voir dire – to speak the truth. Expectations brought into a trial by a juror are hardly those of commitment. Rather, voir dire assists both parties. For instance, if the juror expectation properly notified a prosecutor that these particular jurors expected to receive information regarding the presence or absence of DNA, he is well-informed such that he may challenge the juror for cause in order to determine whether that

9

bias is improper. In fact, the statement, "We're going to have to have DNA to get a conviction and these other things," expresses only the need to deal with the expectations of the juror during trial. This is certainly no different than all juror's wish to hear, see, and examine any other evidence prior to determine what weight it should be given.

The overruling of such an objection may be ill-advised and perhaps improper, but there appears to have been little harm in the ruling. In reality, there was also little harm in the question. This is particularly true given the testimony offered by Susan Camazine, the State's sexual assault nurse witness who testified that she did not take swabs for DNA because the DNA would likely have been degraded after an elapse of 96 hours and that the information related to her was that the last sexual activity occurred prior to that 96-hour window. (3 R.R. 95-96)

Commitment matters continued to be a source of objection during voir dire. During Appellant's voir dire the following exchange occurred:

*Q.* Okay. Okay. All right. And not just for those of y'all who just raised your cards, but just generally, if there's a situation where somebody gets in trouble, is it common to try to deflect attention to something else? Mr. Maines, somebody gets where they're a teenager or whoever --

*MR. JIMERSON:* Objection, Your Honor. May we approach?

*THE COURT:* Yes.

*MR. JIMERSON:* I object to the commitment question. He's just outright trying the case on voir dire. That's just clearly a statement of the defense that

she got in trouble for something else, so she came up with this story. It's just trying the case in voir dire. And if we're going to do that, the State should have the same opportunity. It's a commitment question. That's my objection.

*MR. SANDERS:* I don't believe it's a commitment question at all, because it simply asked about their experience, how people respond to getting in trouble. I don't think it commits a jury.

*THE COURT:* It is too close. I'll sustain the objection.

Here, the court's sustaining of the objection was appropriate. Appellant's counsel could have elicited the very same information by rephrasing the question.

A review of the two objections during voir dire indicates there were no instances in which the Appellant was harmed or irrevocably prejudiced by those rulings.

3. **There Were No Adverse Improper Adverse Rulings During The Trial On Objections Or Motions Had Been Improperly Made Such That They Created An Adverse Effect On The Result Of The Trial.**

During trial testimony, three objections were made by the Appellant's regarding the introduction of physical evidence. Each of these objections were made on the ground of authentication and improper predicate. All of the evidentiary objections were properly overruled. The following exchange is an exemplar of the objections:

Q. (BY MR. WAVRUSA) Can you open that envelope for us and examine its contents, please?
A. That's all that was in it.
Q. Can you take a look at that? Do you recognize that?
A. I do, sir.
Q. What do you recognize it to be?

11

*A.* This is the letter that was provided to Deputy Wright during the initial investigation from the grandfather of the reported victim party.

*Q.* And is it in the same or substantially the same condition as it was in when it was received by the Sheriff's Office?

*A.* Yes, sir, with the exception of the stuff the laboratory did to it.

*MR. WAVRUSA:* Your Honor, we would offer this letter as State's Exhibit No. 5 -- 4, excuse me.

*MR. SANDERS:* I would object on the grounds of hearsay to the content, as well as I don't believe it's been properly authenticated or a proper predicate has been laid to establish that that was the letter provided to the Sheriff's Office.

*THE COURT:* I'll overrule the objection. 4 will be received. (3 R.R. 43)

Objections to testimony were also properly ruled upon. During the course of the trial, four objections were made for hearsay, two for eliciting speculative answers from the witness, and three for the positing of leading questions.

Three of the hearsay objections provided little true need for consideration by the court. However, there was some concern regarding the following exchange which took place during the testimony of Letrevia Jackson, a caseworker for Child Protective Services:

*Q.* Okay. Was there any reason why she wasn't allowed to stay with her maternal grandfather, Herbert Adams?

*A.* Child Protective Services was concerned that -- *MR. JIMERSON:* Objection, Your Honor. May we approach?

*THE COURT:* Yes.

(Conference at the Bench:)

*MR. JIMERSON:* I'm going to object that this is all hearsay, and we have dug into the basis of this, and there's no truth to it. And I don't know whether I would be

able to get it disproven, because I don't know if my witness is still here. I need Petrice Adams. But it's just blatant hearsay.

*MR. SANDERS:* As far as the allegation, I think there were allegations about the grandfather, Herbert Adams, sexually assaulting the mother, Petrice. There are allegations that Herbert Adams, the grandfather, had sexually assaulted Petrice when she was younger. And that's why my understanding, that's why XXXXXXXXX wasn't allowed to stay with him and actually was only allowed supervised visits with him. And I think that the reason we're getting into that is relevant is because it just shows another reason why – that it wasn't Laroyce that did this. If anything happened, there's another possible suspect right there based on that history and based on how the events took place, as far as him getting the letters, these letters, and taking them to law enforcement and kind of initiating this investigation.

*MR. JIMERSON:* I understand his argument for relevance, but it's just blatant hearsay, which we've been going into hearsay and hearsay and hearsay. I've been letting it go, but this is serious. I've got both the parties supposed to be a part of that, Mr. Adams and Petrice, and I represent to the Court -- and I believe Mr. Sanders appreciates -- both of them are going to deny any such allegation.

*THE COURT:* I'll sustain the objection as to the specific allegations. I'll let you say that or you can elicit testimony that she was not allowed or didn't live there or had restricted visitation, but that will be the extent of it. (4 R.R. 7-9)

An allegation that testimony may be hearsay because the District Attorney has investigated a matter is not what makes it hearsay. Rather, a party who asserts the matter for the truth of the allegation is subject to the hearsay rule, its exceptions, and its limitations. An affirmation of investigation by the District Attorney which states the matter lacks evidence should be tested if necessary. That is the very purpose of a trial - the test of allegations.

13

The trial court here prevented the testimony on the specific allegations but allowed at least some leeway as to testimony whereby the limitations on visitation might be elicited. It is a potential harm but Appellant's counsel failed to even elicit those facts in subsequent testimony. Therefore, the abandonment of the trial strategy largely waives any complaint regarding the matter.

**4. There Were No Adverse Improper Rulings On Post-Trial Motions.**

There exists on the record no adverse post-trial rulings by the trial court.

**5. Jury Selection Was Properly Conducted In Order That A Fair And Impartial Jury Was Obtained.**

A full and complete review of the jury selection recorded in 2 R.R. was made with no indication that the jury selection would have been improper or that a fair and impartial jury might not have been accomplished.

**6. The Jury Instructions Were Properly Formulated.**

Tex. Code Crim. Proc. Ann. art. 36.14 provides that prior to the charge being read to the jury, the defendant or his counsel shall have reasonable time to examine the same and he shall present his objections thereto in writing, distinctly specifying each ground of objection. Here, the trial court held a hearing outside the presence of the jury after closing and before final arguments of counsel. Each

party was offered the opportunity to object to the Jury Charge and both parties offered no objection. (4 R.R. 111)

Art. 36.14 provides that in each felony case tried in a court of record the judge shall, before argument begins, deliver to the jury a written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up testimony, discussing the facts or using any argument in his charge calculated to arouse sympathy or excite the passions of the jury. The charge was properly read to the jury. (4 R.R. 112)

In order for the charge to be constitutionally effective, the jury charge must be properly formulated. In a properly formulated charge, there must be a statement of general principles of jurisprudence regarding the foundational matters of a fair and impartial trial, a discussion of the accusation, relevant statutes burden of proof and the application of the law to facts. Jurors must also be well-informed of the rules that control their deliberation.

The trial court's charge fairly met each of these matters. The trial court's general principles discussed the indictment, the presumption of innocence, the burden of proof, the jury's role as factfinder, matters of evidence, the use of exhibits, trial testimony and the verdict. The Accusation section of the charged discussed the actual accusation against the defendant, the standards applicable in

*Wright v. State*, 28 S.W.3d 526, 532 (Tex. Crim. App. 2000) regarding the dating of the offense, and the presentation of the indictment. The relevant statutes were presented accurately and in such plain and concise wording such that they would be unlikely to be misinterpreted by a juror. The burden of proof and definitions were adequately and accurately stated. The application of law to the facts was well-addressed with the elements that must be proved being concisely stated and the standard of agreement governing any final decision by the jury. The lesser included offense was well-defined for the jury in plain and concise language. Lastly, the rules controlling those deliberations were more than adequately enumerated such that any juror might be expected to understand them. (1 C.R. 77-84)

Due to the aforementioned conformity with standards generally accepted by Texas courts, the jury instructions were properly formulated.

**7. The Evidence Was Sufficiently Adduced At Trial To The Offense Upon Which The Conviction Was Based.**

The physical evidence and testimony at trial were sufficient to support a conviction of the defendant. The State offered multiple examples of documents purported to have been written by the defendant. (5 R.R. Exhibits 1-7) The source of the original location of these documents was provided by Jonathan Rhodes, an

investigator employed by the Rusk County Sheriff's Department. (3 R.R. 34-35) His testimony was uncontroverted.

Testimony was given by Sarah Pryor, an employee of the Questioned Documents Section of the Texas Department of Public Safety Crime Laboratory. Ms. Pryor testified that the questioned documents were tested through the use of known exemplars such that a determination as to the author of writings could be determined within a strong probability and that, in her expert opinion, the defendant was the author. (3 R. R. 115) She further testified that the laboratory utilized oblique fiberoptic side lighting, a technique utilized the determine the source of latent writing impressions, if in existence. Her testimony was also uncontroverted.

The State produced Herbert Adams whose testimony added the context to the chronological actions of the various parties prior to their contact with law enforcement authorities. The events testified by Mr. Adams were generally uncontroverted.

The State further produced Halasia Petrice Adams, the defendant's wife, who gained the original outcry from XXXX, her daughter. (3 R.R. 166) While there is some confusion as to the exact timeline of actions due to the somewhat

conflicting testimony given by Herbert Adams and Halasia Petrice Adams, there can be little doubt their testimony was effective.

The State also produced the victim, XXXX, for testimony. The testimony of XXXX was very much at odds with the testimony of Herbert Adams and Halasia Petrice Adams regarding a prior event concerning her "sneaking out" of the house and taking her grandmother's car to do so. However, her testimony as to the actions of Laroyce Allen were unequivocal.

The jury is allowed to weight the testimony and evidence produced at the time of trial. It is their province to determine the credibility of witnesses and it would appear the evidence provided was of reasonable quality upon which a conviction could be made.

## 8. There Was No Failure By Trial Counsel To Object To Fundamental Error.

A complete and exhaustive review of the Reporter's Record and the Clerk's Record has been performed and has revealed no failure by trial counsel to object to fundamental error.

## 9. There Were No Improper Adverse Rulings During The Punishment Phase On Objections Or Motions.

The record is devoid of any adverse ruling to the defendant during the punishment phase.

## 10. The Sentence Was In The Applicable Range Of Punishment.

Tex. Penal Code Ann. § 22.011 provides an offense under this section is a felony of the second degree. Tex. Penal Code Ann. § 12.32(a) provides an individual adjudged guilty of a felony of the second degree shall be punished by imprisonment in the Texas Department of Criminal Justice for any term not more than 20 years or less than 2 years. Tex. Penal Code Ann. § 12.32(b) further provides that in addition to imprisonment, an individual adjudged guilty of a felony of the second degree may be punished by a fine not to exceed $10,000.

The Verdict Form signed by the foreperson of the jury assessed the punishment of 20 years and no fine. (1 C.R. 94) The assessment of this sentence is clearly within statutory guidelines.

## 11. The Written Judgment Accurately Reflects The Sentence Imposed And Credit Was Properly Applied.

The written judgment prepared and filed by the trial court correctly reflect the judgment and credit for time served.(1 C.R. 95)

## 12. Based Upon The Record, Appellant Did Not Receive Ineffective Assistance Of Trial Counsel.

In *Holland v. State*, 761 S.W.2d 307 (Tex. Crim. App. 1988), the Court of Criminal Appeals stated the standard of review regarding the legal issue of ineffectiveness of counsel. The Court of Criminal Appeals stated on page 314 of the opinion the following:

19

In *Hernandez v, State*, 726 S.W.2d 53 (Tex. Crim. App. 1986), this Court adopted as the litmus test to determine the validity of an effective assistance of counsel claim the standard handed down by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *Strickland*, supra, the Supreme Court held that in order to show ineffective assistance, a convicted defendant must (1) show that his trial counsel's performance was deficient, in that counsel made such serious errors he was not functioning effectively as counsel, and (2) show that the deficient performance prejudiced the defense to such a degree that appellant was deprived of a fair trial. In this context, "prejudice" is demonstrated when the convicted defendant shows a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. 104 S.Ct. at 2068.

An exhaustive search has been made of the trial record through examination of the transcripts provided by the Court Reporter and the record provided by the District Clerk. As a result of this examination, it is clear that in the case at bar, trial counsel's performance was free of serious errors.

## CONCLUSION

Reviewing the evidence in the light most favorable to the trial court's rulings, no abuse of the trial court's discretion occurred.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED, MOVANT, CLAY DEAN THOMAS, counsel for Appellant**, respectfully requests this Honorable Texarkana Court of Appeals to:

1. Grant Clay Dean Thomas' Motion To Withdraw As Appellant Counsel.

2. Allow Appellant to review the record and file a brief or other response on his behalf, should he so desire, and

3. Grant any and all other relief to which Appellant may be entitled.

Respectfully submitted,

CLAY THOMAS, P. C.

BY: /s/ Clay Dean Thomas
Clay Dean Thomas
Attorney for Appellant

3548 NE Stallings Drive
Nacogdoches, Texas 75965
Phone:      (936) – 715 – 7144
Facsimile: (877) – 899 – 0382
clay.thomas@claythomaspc.com
State Bar Number: 24088520

## CERTIFICATE OF COMPLIANCE

This is to certify that the sections covered by Texas Rule of Appellate Procedure 9.4(i)(1) contain 5,496 words in 14-point type, excepting footnotes which are in 12-point type. The total word count is 5,496.

*/s/Clay Dean Thomas*
Clay Dean Thomas

## CERTIFICATE OF SERVICE

I, Clay Dean Thomas, attorney for Appellant, do hereby certify that a true and correct copy of the above and foregoing Brief of Appellant has been delivered to the

21

following parties through depositing by First Class Service through the United State

Postal Service on this, the 6th day of October, 2016.

MR. MICHAEL ELWOOD JIMERSON
District Attorney, Rusk County, Texas
115 North Main Street
Henderson, Texas 75652

MR. LAROYCE DEMOND ALLEN
TDCJ No. 02078253
Joe F. Gurney Unit
1385 FM 3328
Palestine, Texas 75803

/s/ Clay Dean Thomas
Clay Dean Thomas

## CERTIFICATE OF APPELLATE COUNSEL

I hereby certify that the foregoing document was electronically filed to

the Clerk, Court of Appeals, Sixth District of Texas, 100 North State Line

Avenue, Suite 20, Texarkana, Texas 75501, on this the 6th day of October,

2016.

/s/ Clay Dean Thomas
Clay Dean Thomas

22